UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CALVIN Q. SNEED

                                                  CIVIL ACTION

VERSUS

                                                  NUMBER 14-600-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY


**<u>RULING ON SOCIAL SECURITY APPEAL</u>**

Plaintiff Calvin Q. Sneed brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and terminating his supplemental security income ("SSI") benefits based on a finding that he was no longer disabled as of November 1, 2011.

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, under sentence four of § 405(g) the Commissioner's decision will be affirmed.


**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.

*Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings.  Even if substantial evidence supports the claimant's position, this is not a ground for reversal.  As long as the ALJ's decision is supported by substantial evidence in the record as a whole it must be affirmed.[1]

---

[1] *Carroll v. Dept. Health & Welfare*, 470 F.2d 252, n. 4 (5th Cir. 1972) (if substantial evidence supports the Commissioner's determination, quantity of evidence claimant submits is irrelevant in terms of judicial review); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palimino v. Barnhart*, 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole contains mixed collection of evidence regarding plaintiff's impairments and their impact, decision is upheld as long as substantial evidence supports it).

In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner – not the court – to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Thus, on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 f.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability. A disability is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations

3

require the ALJ to apply a five step sequential evaluation to each claim for benefits.  20 C.F.R. §§ 404.1520; 416.920.  In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.  *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.  The criteria for listings are stringent, and it is the plaintiff's burden to prove that his condition satisfies a listing.  *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

The burden of proving disability rests on the claimant through

4

the first four steps.  At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work.  If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra.  If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

The ALJ must follow specific steps in determining whether the claimant's disability continues for receipt of SSI benefits. 20 C.F.R. § 416.994.  The evaluation steps for determining whether a claimant's disability has ceased or continues, for persons 18 or older, are found in 20 C.F.R. § 416.994(b)(5)(i) through (vii). They are summarized as follows:

(1) Does the claimant have an impairment or combination of impairments that meets or equals the severity of a listed impairment in appendix 1 of subpart P of part 404 of this chapter?

(2) If not, has there been medical improvement? Medical improvement is any decrease in the medical severity of the impairment(s) that was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled.

5

(3) If there has been medical improvement, we determine whether it is related to the claimant's ability to do work. If the most recent favorable decision was based on the fact that the claimant's impairment met or equaled a listing and medical improvement has occurred and the severity of the prior impairment no longer meets or equals the same listing, we will find that the medical improvement was related to the claimant's ability to work.[2]

(4) If there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, we will consider whether any regulatory exceptions apply.

(5) If medical improvement is shown to be related to the claimant's ability to do work, or if one of the first group of exceptions to medical improvement applies, we will determine whether all current impairments in combination are severe.

(6) If the claimant's impairment(s) is severe, we will assess the claimant's current ability to do substantial gainful activity in accordance with 20 C.F.R. § 416.960, that is, assess the claimant's residual functional capacity based on all current impairments and consider whether he can perform prior work.  If he can do such work, disability will be found to have ended.

(7) If the claimant cannot perform prior work, we will

---

[2] 20 C.F.R. § 416.994(b)(2)(iv)(A).

consider whether the claimant can do other work given the residual functional capacity assessment and age, education, and past work experience.  If so, the disability has ended. If not, the disability continues.

In evaluating the ability to engage in substantial gainful activity, all of the individual's current impairments are considered not just the impairments present at the time of the last favorable decision.  20 C.F.R. § 416.994(b)(5)(v).  This part of the evaluation process incorporates many of the standards set forth in the regulations governing initial disability determinations. However, the difference is that the burden of proof lies with the Commissioner in termination proceedings.  The Commissioner bears the ultimate burden of proving that the claimant is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Greigo v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

## Background and Claims of Error

Plaintiff was 25 years old at the time of the administrative law judge's ("ALJ") decision.[3]  At the age of 7, the plaintiff was initially found disabled and entitled to SSI benefits effective June 1, 1996.  The determination of disability at that time and in a continuing disability review on December 7, 2006 was that the

---

[3] Plaintiff's age placed him in the category of a "younger person." 20 C.F.R. § 404.1563(c); § 404.1563(c).

plaintiff was disabled under the listing criteria for "Intellectual Disability."[4]   Plaintiff attended school and received special education services, and in high school was enrolled in the pre-GED/skills option program.  Plaintiff obtained a skills certificate on graduation rather than a standard high school diploma. AR pp. 59, 67, 86, 89, 113, 172-190, 257-71, 364.  Plaintiff was employed from 2008 through 2012, but was laid off from the jobs he held. Plaintiff's work included operating a forklift, and laborer duties such as hand painting, and cleaning up.  AR pp. 76-81, 104-05, 110, 318, 362-67, 378-80.

Plaintiff underwent a continuing disability review for his SSI benefits in 2011.  AR pp. 49-57, 69-71, 123-24, 157, 166.  A determination was made that the plaintiff was no longer disabled as of November 1, 2011.  Plaintiff appealed this decision and also filed an application for disability income benefits on August 19, 2013 based on earnings he received for the work he performed from 2008 through 2012.  The application for disability benefits was also denied.  This application was escalated to the hearing level and consolidated with the plaintiff's appeal of the cessation of his SSI benefits.[5]

---

[4] Plaintiff also had a speech impairment for which he received speech therapy.  Plaintiff's speech impairment resolved in 2001. AR pp. 173, 179-81, 190, 273.

[5] Plaintiff also filed a disability application in 2011 but he did not appeal the denial of this application.  AR p. 18.

Plaintiff requested an ALJ hearing, and after the hearing the ALJ issued an unfavorable decision on March 20, 2014. AR pp. 15-28. The ALJ first addressed the issue of whether the plaintiff continued to be disabled or whether his entitlement to SSI benefits ceased as of November 1, 2011.  The ALJ found that the severity of the plaintiff's intellectual impairment no longer met Listing 12.05B.  Based on this conclusion and the fact that the plaintiff did not have an additional and significant work-related limitation of function, the ALJ also concluded that the plaintiff's impairments did not meet or equal Listing § 12.05C.  AR pp. 21-26. Under the regulations, therefore, the plaintiff had medical improvement related to the ability to work.  As of November 1, 2011 the plaintiff's borderline intellectual functioning continued to be a severe impairment.[6]

The next step required the ALJ to determine the plaintiff's residual functional capacity ("RFC").  The ALJ found that beginning on November 1, 2011, the plaintiff had the capacity to perform the full range of work at all exertional levels but had nonexertional

---

[6] As required by the regulations, the ALJ considered all of the plaintiff's current impairments.  The ALJ found that as of November 1, 2011, the plaintiff had the following medically determinable impairments - borderline intellectual functioning, left shoulder pain and depression.  The ALJ considered the plaintiff's alleged left shoulder pain and depression, and concluded they were non-severe impairments under standard of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  AR pp. 20-21. Plaintiff did not contest the ALJ's finding that these impairments are not severe.

limitations.   Plaintiff was limited to simple repetitive work involving no more than one, two or three step instructions.  AR p. 26.  Based on this RFC and information obtained at the hearing from the vocational expert, Wendy Klamm, the ALJ found that  the plaintiff could perform his past relevant work as a forklift operator, hand painter and clean up laborer.   Therefore, as of November 1, 2011 the plaintiff was not disabled and no longer eligible to receive SSI benefits, nor was disability established after that date for receipt of disability benefits based on plaintiff's application filed in August 2013.

Plaintiff requested review of the unfavorable decision by the Appeals Council.   AR pp. 1-4, 202-244.   The Appeals Council considered the plaintiff's objections but found no basis to grant the request for review.   Thus, the plaintiff exhausted his administrative remedies and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.

Plaintiff argued that the ALJ's decision is in error and must be reversed for the following reasons: (1) with regard to the SSI claim the ALJ failed to make a medical improvement finding, which is required to terminate benefits, and even if the finding could be inferred from the decision, the record does not contain substantial evidence to support it; (2) with regard to the disability and SSI claim, the ALJ failed to apply the correct legal standard in analyzing whether Listing 12.05B. is met, and substantial evidence

10

does not support the finding that the plaintiff's intellectual impairment does not meet the requirements of the listing.

Based on a careful review of the administrative record as a whole, the court finds that the ALJ applied the proper legal standards and her finding that the plaintiff is not disabled as of November 1, 2011 or thereafter is supported by substantial evidence.

## Analysis

Plaintiff's claims of reversible error must be analyzed in reference to the listing applicable to intellectual disability. Listing 12.05 sets forth the medical criteria that must be met to establish intellectual disability, which was previously designated as mental retardation.[7] It contains an introductory paragraph with the diagnostic description for intellectual disability and four sets of severity criteria, designated as paragraphs A through D. *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)). Thus, the listing separates the question of the impairment's existence from the question of its severity. *Randall*, 570 F.3d at 657. If the claimant's impairment satisfies the diagnostic description in the

---

[7] To avoid any possible confusion, this report uses the term "mental retardation" when that is the term used in the ALJ's decision. For claimants under age 18 the listing is designated as Listing 112.05.

introductory paragraph (and the temporal requirement) and any one of the four severity criteria, the Commissioner will find that the impairment meets the listing. *Valdez v. Colvin*, 2013 WL 6418973, at *3 (W.D.Tex. Dec. 6, 2013).

The diagnostic description in the introductory paragraph includes significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates the onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in criteria A, B, C, or D are satisfied. Those criteria are:

(A) mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

(B) a valid verbal, performance, or full scale IQ of 59 or less;

(C) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

(D) a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: marked

restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The listing does not define "adaptive functioning." However, the Fifth Circuit has indicated that the definition of "adaptive activities" found in § 12.00(C)(1) should be used. Thus, adaptive functioning encompasses adaptive activities "such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."[8] *Arce v. Barnhart*, 185 Fed.Appx. 437 (5th Cir. 2006)(unpublished)*, citing also*, *Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir. 2005). Under the regulations, where the verbal, performance and full scale IQs are provided in the Wechsler series, the Commissioner uses the lowest of the three in conjunction with Listing 12.05.  20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.1, 12.00(D)(6)(c). The ALJ is not required to accept the reported scores.  He may decide not to fully credit them if there is evidence that shows they are unreliable, invalid, or inconsistent with other evidence contained in the record. *See*, *Cole v. Barnhart*, 69 Fed.Appx. 658 (5th Cir. 2003); *Jones v. Barnhart*, 2007

---

[8] 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1, § 12.00(C)(1).

WL 628768 *7 (W.D.Tex. Feb. 21, 2007).

The section of Listing 12.05 relevant to the analysis of the plaintiff's appeal is Listing 12.05B.

**The ALJ applied the correct legal standards.**

Plaintiff's claims of legal error are not supported by the record.  Citing two pages of the ALJ's decision, the plaintiff first argued the ALJ found the listing was not met because the plaintiff's adaptive functioning improved to a level such that a diagnosis of mental retardation was not possible.  Plaintiff argued that a because diagnosis is not a requirement of the listing, the ALJ made a legal error in her analysis.

It is apparent from reading the entire analysis which preceded the statement quoted by the plaintiff, that the ALJ did not rest her conclusion on the finding that it was not possible to diagnose the plaintiff with mental retardation.  Rather, the ALJ analyzed all of the evidence and found that the listing was not met because: (1) the plaintiff's current adaptive functioning had improved such that the plaintiff no longer had "deficits in adaptive functioning," as required by the introductory paragraph of the listing; and, (2) the IQ scores obtained on November 1, 2011 by clinical psychologist Sandra B. Durdin, Ph.D. were not valid.  AR pp. 21-25.

Plaintiff's argued that the ALJ erred by failing to make a finding of medical improvement.  Plaintiff acknowledged the ALJ

found that as of November 1, 2011 he had experienced medical improvement related to the ability to work, but argued that the ALJ was required to make a separate, prerequisite finding of medical improvement.[9]

A fair reading of the ALJ's decision does not support the plaintiff's position. Again, it is apparent from the ALJ's analysis that she found that medical improvement had occurred since the comparison point decision ("CPD") of December 7, 2006. AR p. 26. As a result of this medical improvement the plaintiff no longer met the listing that was met at the time of the CPD - Listing 12.05B.[10] Under the regulations this finding establishes that medical improvement is related to the claimant's ability to work. Thus, the ALJ's findings on medical improvement and that the improvement related to the ability to work are clear and in accordance with the regulations. AR pp. 22-26. This claim of error is without merit.

_____

[9] Plaintiff asserted that finding a listing is no longer met only establishes medical improvement related to ability to work under 20 C.F.R. § 416.994(b)(2)(iv)(A), if there is a separate finding of medical improvement. Record document number 13, Plaintiff's Memorandum in Support of Appeal, p. 21. Plaintiff did not cite any specific authority to support this interpretation of § 416.994(b)(2)(iv)(A).

[10] The ALJ stated that "the medical improvement found herein is related to the ability to work because, as of November 1, 2011 per the above discussion, the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing that was met at the time of the CPD. 20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)." AR p. 26.

**The ALJ's findings are supported by substantial evidence.**

Plaintiff argued the ALJ's findings that he experienced medical improvement in his condition and that his borderline intellectual impairment did not meet Listing 12.05B are not supported by substantial evidence.

Review of the administrative record does not support the plaintiff's arguments. Rather, the ALJ's findings are corroborated by substantial evidence. Essentially, the plaintiff's position is that the ALJ should have credited the evidence supporting his claim of disability, including the November 2006 report of psychologist Donnell C. Ashford, and discredited more recent evidence, such as Durdin's psychological evaluation. However, these arguments are contrary to several well established principles. On judicial review the court is not trier of fact and does not re-weigh the evidence or resolve conflicts in the evidence. The court cannot try issues de novo. Furthermore, the fact that the plaintiff can point to evidence in the record, or even substantial evidence, supporting his claim of disability is irrelevant in terms of judicial review. As long as there is substantial evidence to support the ALJ's findings under § 405(g) those findings must be affirmed.

The record as a whole contains evidence that is relevant and sufficient for a reasonable mind to accept as adequate support for the ALJ's findings. As the ALJ acknowledged, from the initial

16

disability determination until the CPD, evidence such as the plaintiff's school records and psychological evaluations "clearly supported the determination at that time" – that the plaintiff was disabled under Listing 12.05B.  After the CPD a different picture emerged from the evidence.  This evidence showed that from 2008 through 2012 the plaintiff was able to work and maintain employment.  Gaps in employment during this period and thereafter were the result of the plaintiff being laid off from these jobs. There is no evidence that the plaintiff's impairment interfered with his ability to carry out his job duties or caused him to lose his employment.[11]

Evidence of the plaintiff's current activities of daily living also provided substantial support for finding that the plaintiff did not meet the Listing 12.05B requirement of "deficits in adaptive functioning."  Relevant to adaptive functioning, evidence in the record showed the plaintiff had no problems with personal care/grooming, and was able to make change and manage his own

[11] Plaintiff asserted the record shows it is an incorrect statement that he was certified by testing to operate a forklift; because he was unable to read the test he failed it.  AR pp. 289, 370-71.  Plaintiff testified that he could not read and pass an OSHA test; he did not testify or present any other evidence about a written test for forklift certification.  Plaintiff reported to Durdin that he was certified by testing to operate a forklift. Whether this test was verbal or written, there is no evidence to contradict the statement in Durdin's report.

17

money; could drive a car,[12] watch sports on television and attend sporting events; do yard work and household chores such as cleaning; wash clothes and prepare some meals; shop, attend church, spend time with friends and ride horses; visit his children often, and otherwise engage in normal daily activities.  Plaintiff stated that when he worked he got to work on time, liked his job, and got along well with his co-workers.  Other evidence showed the plaintiff is a registered voter, and can tell time, follow directions and verbal instructions, as well as communicate using complex sentences.  AR pp. 59-63, 67, 128, 145, 274, 289-90, 362-76.

The above evidence demonstrates the plaintiff's ability to successfully work and engage in normal activities of daily living. This evidence constitutes substantial evidence to support the ALJ's finding that: (1) the plaintiff had medical improvement after the CPD; and, (2) beginning on November 1, 2011 the plaintiff was not disabled under Listing 12.05B because he did not meet the requirement of  deficits in adaptive functioning.  That there may be other evidence in the record that could support finding deficits in adaptive functioning does not negate the substantial evidence in the record that supports the ALJ's conclusion.

Plaintiff appeared to argue that if there is some evidence in

---

[12] Plaintiff could drive, but was unable to obtain a driver's license because he could not read the driving test.

the record that supports deficits in adaptive functioning, and other evidence that there are no deficits, then under the listing the ALJ must find that the requirement of deficits in adaptive functioning is met.

Neither the listing itself nor the regulation cited by the plaintiff support this argument. Moreover, it is apparent the evidence that the plaintiff cites and which he claims demonstrates deficits in adaptive functioning, was not fully credited by the ALJ. The evidence discussed above demonstrates that this credibility finding, as well as the finding the plaintiff did not meet the requirement of deficits in adaptive functioning, are supported by substantial evidence. Thus, the plaintiff's argument fails to establish any legal error, or that the ALJ's findings are not based on substantial evidence.[13]

Plaintiff also argued there is no substantial evidence to support the ALJ's finding that he did not meet the IQ score

---

[13] Plaintiff also argued the ALJ engaged in an improper, unsupported medical improvement analysis because Durdin's psychological evaluation did not include a formal assessment of the plaintiff's adaptive functioning like the assessment performed by Ashford in December 2006. The adaptive functioning test performed by Ashford is the SIB-R. AR pp. 275-76, 288-91. Without this type of testing, plaintiff argued, the ALJ could not validly compare the plaintiff's current adaptive functioning to functioning at the time of the CPD.

Plaintiff cited no authority to support the argument that the ALJ must have a formal test result to assess medical improvement, or that the ALJ could not determine medical improvement based on the type of evidence she considered to make this finding. Furthermore, the factors the ALJ considered are those found in § 12.00(C)(1).

required by the listing.[14]

This claim of error is also without merit.  The ALJ decision shows after review of all the evidence, she decided to give more weight to the evaluation and opinions of Durdin, rather the earlier evidence of the plaintiff's impairment and functioning, including Ashford's report.  The ALJ also credited Durdin's opinion that the tests scores were invalid[15] and the plaintiff did not meet the IQ score required by Listing 12.05B.  Durdin's report and opinions are sufficient to establish the ALJ's finding is supported by substantial evidence.

Plaintiff argued that the Durdin report on which the ALJ relied does not constitute substantial evidence because Durdin's opinions are inconsistent with the other evidence in the record and based on incorrect facts.

Again, the plaintiff is essentially arguing that the ALJ should have credited the evidence in the record that favors his claim, rather than the Durdin evaluation and more recent evidence of his ability to sustain employment and engage in normal activities of daily living.  This does not demonstrate any error by the ALJ or a lack of substantial evidence.  It is simply the ALJ

---

[14] The listing requires a valid verbal, performance or full scale IQ score of 59 or less.

[15] An ALJ may make factual determinations on the validity of IQ test scores.  *Muse v. Sullivan,* 925 F.2d 785 (5th Cir. 1991); *Hamilton v. Shalala*, 39 F.3d 319 (5th Cir. 1994).

acting as trier of fact - considering and weighing all the evidence, and then deciding what weight and credit to give to the various statements, opinions and reports.

Plaintiff also contended the ALJ could not rely on Durdin's opinion because it was based on incorrect facts. Plaintiff argued the report incorrectly stated he was in regular classes, obtained a high school diploma and worked as a forklift operator certified by testing.

The record does not support the argument that Durdin relied on incorrect facts. Durdin stated that the plaintiff was in both resource and regular classes, which is consistent with Ashford's report and the school records. AR pp. 273, 290. With regard to the diploma and forklift certification, it appears that Durdin was simply reporting what the plaintiff told him. Furthermore, the evidence shows the plaintiff did attend school through the twelfth grade and receive a high school certificate, and there is no evidence to contradict the statement that the plaintiff was certified to operate a forklift. The record demonstrates that Durdin considered a multitude of factors in finding that the plaintiff's test scores were invalid - communication/conduct during the testing and evaluation, plaintiff's mental status, reported activities of daily living and educational history.[16] There is no

---

[16] This is consistent with the regulation guidance which states in § 12.00(D)(6)(a) that:

(continued...)

basis to conclude that it was error for the ALJ to rely on Durdin's report.

After the ALJ found the plaintiff's disability under Listing 12.05B ceased as of November 1, 2011, she addressed the plaintiff's ability to engage in substantial gainful activity. The ALJ found the plaintiff's borderline intellectual impairment continued to be severe, which limited the plaintiff to simple repetitive work involving no more than, one, two or three step instructions. However, the plaintiff could perform a full range of work activities at all exertional levels. Given this RFC finding and evidence the plaintiff is illiterate,[17] the ALJ asked the vocational expert whether the plaintiff would be able to perform his past

---

[16](...continued)
The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test scores are considered valid and consistent with the developmental history and the degree of functional limitation.

[17] Illiteracy is defined in the regulations as the inability to read or write. A person is considered illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though ther person can sign his or her name. Generally, an illiterate person has had little or no formal schooling. 20 C.F.R. § 404.1564(b)(1). A finding that a claimant is illiterate is a factor is disability determinations, but does not necessarily mean an individual cannot engage in substantial gainful employment. For example, under the Medical-Vocational Guidelines, depending on other factors, a claimant who is illiterate can be found not disabled at the fifth step.

employment as a hand painter, clean-up and yard laborer. In response, vocational expert Wendy Klamm testified the plaintiff would be able to do these jobs which he held in the past. AR pp. 377-81. This vocational testimony constitutes substantial evidence supporting the ALJ's determination that the plaintiff's disability ended on November 1, 2011, and the plaintiff has not been disabled since that date.

### Conclusion

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application of Calvin Q. Sneed for disability income benefits, and terminating the plaintiff's entitlement to supplemental security income ("SSI") benefits based on a finding he was no longer disabled as of November 1, 2011, is affirmed.

A separate judgment will be issued.

Baton Rouge, Louisiana, November 24, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE